UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
_____

In re                                                   Chapter 13
Timothy A. Rick                                         Case No. 12-31026-svk
          Debtor.
_____

**DECISION AND ORDER DENYING MICHELE RICK'S MOTION FOR CONTEMPT**

Timothy Rick ("Tim" or the "Debtor") and Michele Rick ("Michele")[1] were married in 1989. (Docket No. 53, ¶ 1.) In June 1996, during their marriage, Michele opened a credit card account with Discover Bank ("Discover"). (Docket No. 39 at 8.) Tim and Michele divorced in 2009. Under the terms of the divorce settlement, Tim agreed to pay the Discover account and hold Michele harmless for the obligation. (Docket No. 17 at 10, 20, 21.)

Tim did not pay the Discover obligation and filed a Chapter 13 bankruptcy petition on July 24, 2012. He listed Discover Financial, with account number ending in 3057, on Schedule F with a balance of $5,278.00. (Docket No. 1.) He did not list Michele as a co-debtor on the Discover account, although he listed her as a co-debtor on a Chase home mortgage. (*Id.*)

On October 25, 2012, Tim filed a motion to hold Michele in contempt for violating the automatic stay. (Docket No. 12.) Michele had filed a sanctions action against Tim in the Milwaukee County Circuit Court for failing to pay a debt assigned to him in the divorce settlement; when Tim failed to appear, the Circuit Court for Milwaukee County entered a bench warrant for Tim's arrest. (*Id.*) In response to Tim's motion, this Court enjoined Michele from enforcing her sanctions order until a hearing could be held. (Docket No. 19.) Despite the Court

---

[1] Michele's name is sometimes spelled "Michelle" in pleadings filed in this case. The pleadings from the Milwaukee County Circuit Court divorce action use the spelling "Michele" and this Court will adopt that version.

order, Michele failed to take any action, and Tim was arrested and forced to post a bond in the amount of the unpaid obligation in order to be released from jail. As a result, Tim filed another motion for contempt against Michele and the City of Franklin police department. Eventually Tim's bond was returned, less a service fee of $321. Since Tim's own bankruptcy attorney failed to appear at an important hearing, the Court required Michele to pay only 20% of $321 as damages for her contempt. It appears from the record that the debt involved in the contempt proceeding was the debt to Discover.

On November 1, 2012, the Court confirmed Tim's Chapter 13 plan, which proposed to pay 2% or $272.73, whichever is greater, pro rata on unsecured claims. (Docket No. 21.) Tim has made all payments required under the plan.

On July 3, 2014, Discover referred Michele's account to EIS Collections ("EIS"). (Docket No. 46 at 2.) Before pursuing action against Michele, EIS performed a "bankruptcy scrub" on the file, which consisted of sending Michele's social security number to an outside vendor to run it against a bankruptcy filing database. (*Id.*) The bankruptcy scrub indicated no bankruptcy filings, and EIS commenced collection efforts. Michele's motion is vague as to exactly what collection efforts EIS and Discover made; a response filed by EIS refers to a letter, but EIS sent the letter before receiving notice of Tim's bankruptcy and Michele's alleged status as a co-debtor. (*Id*. at 3, 6.)

On August 29, 2014, Michele filed the present motion for contempt against Discover, EIS, and the law firm of Messerli & Kramer P.A. ("M&K") for violation of the co-debtor stay of 11 U.S.C. § 1301. (Docket No. 35.) The Court held a hearing on September 3, 2014. After considering the responses and arguments of counsel, the Court denied Michele's motion as to M&K, and denied M&K's request for costs. (Docket No. 44.) The Court invited the remaining

2

parties to file letter briefs addressing whether the co-debtor stay applies to protect Michele under these circumstances. The parties have submitted briefs, and this Decision constitutes the Court's findings of fact and conclusions of law.

Section 1301(a) provides that "a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor." Michele cites Wis. Stat. § 766.55(2m) which states: "If a dissolution decree provides that the nonincurring spouse is responsible for satisfaction of the obligation, the obligation may be satisfied as if both spouses had incurred the obligation." She concludes that Tim is personally liable for the Discover debt. As Michele is liable on the same debt by virtue of her contract with Discover, she argues that she and Tim are co-debtors. A closer reading of the Bankruptcy Code reveals the flaws in Michele's arguments. Moreover, even if Michele arguably is protected by the co-debtor stay, she did not provide evidence that EIS or Discover willfully violated it.

First, Michele is not a co-debtor in the sense contemplated by the Bankruptcy Code. "Congress clearly intended the statute to afford relief to a debtor by depriving a creditor of the considerable extra-judicial pressure which could be brought to bear toward surrender of collateral, reaffirmation, or other realization on debt, by continuing concerted collection action against an 'innocent' third-party co-obligor not in bankruptcy. The legislative history . . . makes it clear that Congress did not intend to allow the codebtor stay to be asserted by a co-obligor who in fact received the consideration for the debt." *In re Bigalk*, 75 B.R. 561, 565-66 (Bankr. D. Minn. 1987) (citations omitted). Here, Michele was the account holder and received the consideration for the debt; Tim only became liable by virtue of the divorce agreement. Tim's motions for contempt against Michele earlier in this case likewise do not comport with the

3

traditional notions of the co-debtor stay. Rather than a co-debtor, Michele conducted herself as Tim's creditor, seeking to sanction and arrest him for failing to pay the Discover debt.

According to the court in *Jacobs v. Jaeger-Jacobs (In re Jaeger-Jacobs)*, 490 B.R. 352 (Bankr. E.D. Wis. 2013), "[a] provision in a divorce decree to hold harmless or indemnify a spouse for joint obligations incurred during a marriage creates a 'new' debt, running solely between the former spouses." *Id.* at 357 (citing *Schweitzer v. Schweitzer (In re Schweitzer)*, 370 B.R. 145, 150 (Bankr. S.D. Ohio 2007)). However, the creation of the new debt does not discharge Michele's personal liability to the original creditor. *Damschroeder v. Williams (In re Williams)*, 398 B.R. 464, 469 (Bankr. N.D. Ohio 2008). Arguably, then, the debt to Discover is not a debt of the Debtor, Tim, but rather is a debt of Michele to Discover, and of Tim to Michele. If the obligation to Discover is not a debt "of the debtor," then the co-debtor stay does not apply.

In addition to the requirement that the debt must be a debt "of the debtor," the alleged co-debtor must be liable "with the debtor" on the debt. The court in *In re Cain*, 347 B.R. 428, 431-32 (Bankr. N.D. Fla. 2006), analyzed this requirement, and found that to the extent the amount owed by the co-debtor exceeded the percentage to be paid to the creditor in a confirmed plan, the co-debtor stay did not apply:

> If a confirmed plan shows that a certain percentage of an allowed claim will be paid, any amount above that which the creditor believes is still owed by the debtor is effectively discharged as to that debtor. *See Green Tree Fin. Corp. v. Garrett (In re Garrett)*, 185 B.R. 620, 622 (Bankr. N.D. Ala. 1995) ("confirmation binds the debtor and all creditors, determining the rights and liabilities of the parties"). It follows that a debtor may not use the amount beyond what is stated in the plan to invoke the co-debtor stay. Here, the debtor has proposed to pay 100% of the allowed claim. Cadle believes that an amount above what is provided for by the plan is still owed to it. However, the debtor no longer owes this potential excess amount because the confirmed plan has determined the rights and liabilities of the parties and is binding on all creditors. <u>Therefore, the debtor here may not assert that the co-debtor stay applies to Cadle's attempts to collect any excess debt from the debtor's husband because the debtor herself no longer owes any excess debt.</u>

4

(emphasis supplied).

Tim's confirmed plan provides that he will pay 2% to the unsecured creditors. Even assuming that the debt owed to Discover is a debt "of the debtor," under the *Cain* court's reasoning, Michele is only liable "with the debtor" as to the 2%, and the co-debtor stay does not apply to the 98% of the debt that the Debtor is not liable for with Michele. As the court in *Cain* stated: "It follows that if a debtor is not liable on the part of the debt the creditor is trying to collect from a co-debtor, then the co-debtor is not 'an individual that is liable on such debt *with the debtor*.' If the debtor is no longer liable on such debt with the co-debtor, then the co-debtor stay of Section 1301(a) is inapplicable." *Id*. at 431 (emphasis in original). To the extent that the Debtor, Tim, is no longer liable to Discover, Michele is not liable with him on the debt, and the co-debtor stay does not apply. And, even if the co-debtor stay applies, it should be lifted so that EIS and Discover can collect from Michele the 98% of the debt that is not being paid under Tim's plan. 11 U.S.C. § 1301(c).

Assuming the co-debtor stay applies to protect Michele in these unusual circumstances, Michele is not entitled to an award for damages from EIS and Discover. Section 1301 does not provide an affirmative remedy for violations of the co-debtor stay. Instead, a bankruptcy court may redress violations of the co-debtor stay through the power granted under § 105(a) of the Bankruptcy Code. *Patti v. Fred Ehrlich, PC*, 304 B.R. 182, 187 (E.D. Pa. 2003). "Violation of a bankruptcy stay, which is an injunction with the force of an order, may give rise to civil contempt. *In re Grosse*, 84 B.R. 377, 383-84 (Bankr. E.D. Pa. 1988). To establish civil contempt, a plaintiff must prove by clear and convincing evidence the following: (a) a valid order existed, (b) the defendant had knowledge of the order, and (c) the defendant disobeyed the order. *In re Lands End Leasing, Inc*., 220 B.R. 226, 233-34 (Bankr. D.N.J. 1998)." *Id*.

5

Michele's motion alleges that EIS and Discover had notice of the Debtor's bankruptcy, and they failed to cease collection efforts despite communications from Michele and her attorney. (Docket No. 35 at 1.) Michele fails to support these allegations with any evidence whatsoever. In fact, EIS is not listed as a creditor in Tim's bankruptcy, and Michele did not provide any indication of when she advised EIS of the bankruptcy. According to the evidence presented by EIS, the collection agency conducted a "bankruptcy scrub" on the account prior to activating it and assigning it to a collector. (Docket No. 46 at 2.) The bankruptcy scrub did not return any bankruptcy filings for Michele's social security number. (*Id.*) EIS also performed daily bankruptcy scrubs, which revealed no positive hits on Michele's social security number. (*Id.*) Having satisfied itself that Michele was not protected by a bankruptcy stay, EIS sent a letter to Michele, before learning of Tim's bankruptcy and Michele's claim that she was protected by the co-debtor stay. (*Id.*) Once it learned of the stay, EIS stopped contacting Michele.

Although the Debtor did list Discover as a creditor in his bankruptcy proceeding, the account number listed in the Debtor's schedules ends in 3057. (Docket No. 1.) The account associated with Michele ends in 8081. (Docket No. 46 at 3.) Michele is also not listed as a co-debtor on the Discover debt. (*See* Docket No. 1.) *See In re Sweitzer,* 111 B.R. 792, 798-99 (Bankr. W.D. Wis. 1990) ("[The] creditor faces the enormous burden of first, ascertaining that it has no claim against the debtor named on the petition, second, attempting to ascertain the name of the named debtor's nondebtor spouse, if any, third, ascertaining whether it has a claim against the nondebtor spouse, and/or grounds to object to the nondebtor spouse's discharge or to the discharge of the nondebtor spouse's debt to the creditor, and, if so, fourth, filing its proof of claim and/or complaint objecting to discharge, all within the stringent time requirements of the

Bankruptcy Rules."). EIS alleges that it first received notice of the Debtor's bankruptcy petition when it received the present motion for contempt proceedings on September 10, 2014. (Docket No. 46 at 7.) EIS notes that it last made an attempt to contact Michele regarding the Discover debt on September 9, 2014, the day before it received notice of the Debtor's bankruptcy filing. (*Id.*)

Since Michele has not proven that EIS or Discover had notice of the existence of the co-debtor stay before contacting Michele, she could not prove that they willfully violated the stay. And she has not alleged, much less proven, any damages. In short, Michele's motion and supporting briefs fall far short of the legal standard necessary to impose sanctions on a creditor for violating the co-debtor stay, even assuming that the stay applies in the first place.

To summarize, this is not the circumstance and Michele is not the type of individual Congress had in mind when fashioning the co-debtor stay. The co-debtor stay was enacted to protect the debtor from pressure from creditors holding a family member's guaranty. In this case, Michele herself pursued collection so vigorously that the Debtor was arrested and jailed.

Concededly, an argument can be concocted that Wisconsin marital property law and the parties' divorce agreement convert Michele's debt to Discover to Tim's debt. And Michele is certainly liable on the Discover debt in her own right, so in that sense she is liable as a co-debtor. But the stronger, more logical position is that the Discover debt is not a debt of the Debtor, and Michele is not liable "with" Tim on 98% of the debt. However, even if the co-debtor stay applies, neither EIS nor Discover had notice of it, and they cannot be held in contempt for violating an unknown stay. Finally, Michele's claims for damages are completely unsupported by any facts or evidence.

IT IS THEREFORE ORDERED: Michele Rick's Motion for Contempt is denied.

IT IS FURTHER ORDERED: to the extent the co-debtor stay applies, the Court hereby modifies it to enable Discover, EIS and their attorneys and agents to collect all sums not paid through the Debtor's plan.

Dated: December 11, 2014

By the Court:

*Susan Kelley*

Susan V. Kelley
Chief U.S. Bankruptcy Judge